## Hamilton's Nomination Papers.

*Election law — Nomination papers — Nomination by individual not connected with conventions, primary meeting, etc.—Certificate for affidavit of five electors—Acts of June 10, 1893, and July 9, 1897—Statutes.*

1. Where a nomination paper has been filed by an individual under section 3 of the Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, it is not necessary to file an affidavit by five electors setting forth that they have adopted a certain political appellation, as required by the proviso in section 3 of the latter act.

2. Section 3 of the Act of July 9, 1897, P. L. 223, which provides that the number of electors signing a nomination paper "shall be at least 2 per centum of the largest entire vote for any officer elected at the last preceding election," means the highest vote given to the officer elected, and does not mean the total vote cast for the office.

3. Where words in a statute are not ambiguous, they should be given their usual and well-understood meaning.

*Election law — Jury commissioner — Eligibility — Re-election — Act of April 10, 1867.*

4. Under the Act of April 10, 1867, P. L. 62, where a person was elected to the office of jury commissioner in 1917 and re-elected in 1921, he is not eligible for re-election in 1925.

5. If such a person files a nomination paper in 1925, it will be stricken off on objections filed to it.

6. In such case, the objectors are not bound to await the result of the election, and then, if the respondent is re-elected, to proceed by *quo warranto* or some other proceeding to test his right to the office.

Objections to nomination papers filed for John H. Hamilton as a candidate for jury commissioner. C. P. Clinton Co., Oct. T., 1925, No. 3.

*M. E. Haggerty*, for petitioner; *John B. Myers*, contra.

WHITEHEAD, P. J., 29th judicial district, specially presiding, Oct. 16, 1925.— On Oct. 5, 1925, the respondent in this issue filed with the county commissioners what is termed a nomination paper, in which paper it is set out: "We, the undersigned, all of whom are qualified electors of Clinton County, representing the Independent Party or Policy, hereby nominate the following persons, viz., John H. Hamilton, gardener, residence 130 North Fairview Street, Lock Haven, Pa., for the office of jury commissioner."

This paper contains the signatures of 104 electors. No affidavit was made a part of or attached to the said paper other than the affidavit that the signa-

tures attached to said paper were the signatures of qualified electors of the County of Clinton.

So far as the evidence offered in this case shows, no affidavit was filed in the prothonotary's office, either before or after the filing of this paper, showing that any persons composing a political party had adopted the name of the Independent Party or Policy.

On Oct. 8, 1925, Charles E. Slegle and Henry M. B. Weicksel filed in the prothonotary's office objections to the nomination paper above set out.

The reasons given to sustain these objections are as follows:

3. That your petitioners object to said nomination paper for the following reasons:

(a) That five (5) electors, composing the "Independent Party" of the County of Clinton, did not pre-empt the name "Independent Party" by filing the necessary affidavit in the office of the Prothonotary of Clinton County, as required by the Acts of July 9, 1897, P. L. 223, and July 9, 1919, P. L. 855.

(b) That no certificate from the Prothonotary of Clinton County was filed with said nomination paper setting forth compliance with the provisions of the Act of July 9, 1897, P. L. 223, and the Act of July 9, 1919, P. L. 855, in pre-empting the name "Independent Party" for said office of jury commissioner.

(c) That said nomination paper does not contain a sufficient number of valid signatures, as required by the acts of assembly in such cases made and provided.

(d) That said nomination paper is in other respects defective and insufficient.

(e) That said John H. Hamilton is ineligible for the office of jury commissioner, for the reason that he seeks a second re-election within six years, contrary to the express terms of section 1 of the Act of April 10, 1867, P. L. 62; 2 Purd. Dig. 2062.

4. That for the foregoing reasons, said nomination paper of John H. Hamilton is wholly void.

### Discussion.

At this hearing it was admitted by counsel for respondent that paragraphs 1 and 2 and paragraphs (a) and (b) under the third reason in said objections are statements of fact, but counsel alleges, in connection with these admissions, that the affidavit mentioned in paragraph (a) and the certificate mentioned in paragraph (b) were not necessary or required in this case.

Are these allegations correct? Was it necessary, in order to entitle the respondent to properly file his nomination paper, for five electors, composing the Independent Party, to first pre-empt the name of said party? We think not.

The Act of June 10, 1893, P. L. 419, as amended by the Act of July 9, 1897, P. L. 223, clearly provides for three methods of nomination.

The first method is under section 2 of the Act of 1893, which provides for the filing of nomination papers following a convention of delegates, or primary meetings of electors, or caucuses held under the rules, or any board authorized to certify nomination papers representing a political party.

The second method is under section 3 of said Act of 1893, which provides for the filing of nomination papers by an individual not connected with, or related to, any convention, primary meeting, caucus or board.

The petition in the case at bar was filed under this method; that is, under section 3 of the Act of 1893, as amended in the Act of 1897. Under this sec-

Hamilton's Nomination Papers.

tion, any qualified elector could file a petition as a candidate for the office of jury commissioner, provided the petition contained the names of 2 per centum of the largest entire vote cast for any officer elected at the last preceding election in the county.

The third method is under the proviso in section 3 of the Act of 1893, as amended by the Act of 1897, and which proviso provides for the nomination of candidates when and after five electors composing any political body making a nomination by nomination papers shall file with the prothonotary an affidavit setting forth that they have adopted a certain political appellation to designate their policy.

Under the *first* method of nominations, that provided for in section 2 of the Act of 1893, and under the *third* method, that provided by the proviso in section 3 of the Act of 1897, certain certificates must accompany the nomination paper when filed. Under the *second* method, that provided in section 3 of the Act of 1897, the act under which the nomination paper in this case was filed, no certificate is required.

Counsel for objectors strenuously argues that this case is on all fours with the case decided by Judge Copeland, In re Cramer's Nomination Papers, 2 D. & C. 46. With this argument we cannot agree.

In that case five electors filed an affidavit in the prothonotary's office setting forth that each was an elector of the Borough of Scotsdale, County of Westmoreland, composing a political party making nominations by nomination paper or papers, and that they adopted the name of the Citizens' Party to designate their policy for the purpose of nominating candidates for election.

It was under this pre-emption that the nomination paper was filed by the respondent in that case, and as the pre-emption to the party name had been claimed by the party filing the said petition in the prothonotary's office, there should have been a certificate from the prothonotary showing these facts. Such certificate, however, did not accompany the nomination papers, and because of this the objection was sustained. It was an entirely different case from the one at bar.

The Amendment of July 9, 1919, which has been referred to in this case, has no bearing upon the affidavit or certificate.

Because of the fact that the nomination paper filed in this case was filed under the second method, as above stated, no affidavit other than the affidavit made to said paper and no certificate was necessary; therefore, paragraphs *(a)* and *(b)* under said reason cannot be sustained and the same are dismissed.

So far as the form of the nomination paper is concerned, the crux of this issue is contained in paragraph *(c)* of the third reason.

This paragraph is as follows:

*(c)* That said nomination paper does not contain a sufficient number of valid signatures, as required by the acts of assembly in such case made and provided.

This objection raises the question as to the number of signers necessary in the case at bar, and to determine this question requires careful consideration of the language used in section 3 of the Act of 1897. This language is as follows: "The number of qualified electors of the electoral district or division signing such nomination paper shall be at least 2 per centum of the *largest entire vote for any officer elected at* the last preceding election in the said electoral district or division."

Does this mean the total vote cast for the office, or does it mean the total vote cast for an individual elected to an office?

If the language used applies to the office and not to the individual receiving the largest entire vote and elected, then this objection must be sustained; otherwise, not.

The last general election in Clinton County was held Nov. 4, 1924. At this election the highest vote cast was for the office of Representative in the General Assembly, and from the evidence it appears that Dr. J. B. Critchfield received the largest entire vote which was cast *for any officer elected*. He received 4489 votes.

At this same election J. Stuart Groupe was a candidate for the same office, that of Representative in the General Assembly, and he received 2870 votes on the Democratic ticket, 330 votes on the Progressive ticket, and 148 votes on the Social ticket, or a total of 3348 votes. He was, therefore, not elected.

At this same election, for the same office, Edward P. Jones received 998 votes on the Labor ticket and 286 votes on the Prohibition ticket, or a total of 1284 votes, but he was not elected.

The total vote cast for Representative in the General Assembly in Clinton County in the general election of 1924 was 9121 votes. The number of electors or signers on the nomination paper filed in this case was 104.

From this it will be seen that if, as argued by counsel for the objectors, the 2 per centum referred to in the act of assembly should be based upon the total vote cast for the office of Representative in the General Assembly, then the petition lacks the requisite number of signers.

If, however, the language used in the act refers to the highest vote given to the *officer elected*, then the petition does contain the requisite number of signers.

Where words used are not ambiguous, they should be given the usual and well-understood meaning of such words.

Counsel for the objectors argue that the words "largest entire vote" apply to the office and not, as stated in the act, to the largest vote received by the officer elected. In this construction, however, he sets aside entirely the words *"for any officer elected."*

If the legislature meant that the nomination paper should contain 2 per centum of the largest total vote cast for any office for which votes were to be received, it does seem that they would have had intelligence enough to have so expressed their meaning.

In the case at bar, Dr. Critchfield received the highest number of votes, and was, therefore, declared elected. All these votes were cast by members of one political party, and were, therefore, the *entire* vote received and the largest vote which any person elected to this office received.

Mr. Groupe received votes from members of three political parties. Now, suppose that the *entire vote* cast for Mr. Groupe would have exceeded the vote given Dr. Critchfield, then, and in that case, would not Mr. Groupe have been declared elected?

If this supposition was a fact, would not the nomination paper filed meet the exact words of the act in question so far as the number of signers is concerned?

Mr. Groupe would have been the person receiving "the largest entire vote for any officer elected," and 2 per centum of his vote would be a compliance with the clause in question to the letter.

It is true that Judge Rossiter in Lavery's Nomination Paper, 4 D. & C. 437, Fact 5, seems to have used the total vote cast for the office of Governor in his calculation of the 2 per centum, but in that case there were so many glaring defects, outside of this fact, that required the court to sustain the objec-

tions, and as the respondent did not appear, either in person or by counsel, we do not believe that the learned court considered the question now before us.

As above indicated, in order to sustain objection *(c)*, we must eliminate the words "largest entire vote for any officer elected" and read into the act the words "largest entire vote for any office." Whereas, by leaving the words stand as they are they would simply mean that we should add together all the votes cast for the officer elected. This total would be the highest or *largest vote cast for any officer elected.*

It frequently happens that two or more candidates receive votes from all political parties. In such cases, the one whose entire vote is the larger or largest is declared the one elected.

Dr. Critchfield having received the largest entire vote was, therefore, the officer elected, and it follows that the nomination paper filed should contain 2 per centum of his entire vote.

It is admitted that respondent's nomination paper contained such number, and, therefore, this objection is dismissed.

As no evidence was offered to sustain paragraph *(d)*, of reasons 3, it is also dismissed.

Paragraph *(e)*, section 3, is as follows: *(e)* That said John H. Hamilton is ineligible for the office of jury commissioner, for the reason that he seeks a second re-election within six years, contrary to the express terms of section 1 of the Act of April 10, 1867, P. L. 62; 2 Purd. Dig. 2062.

This objection is filed under section 6 of the Act of 1893, amended by section 6 of the Act of July 9, 1919, P. L. 832, and raises the question of the right of respondent to file the nomination paper which he filed in this case.

Section 6 of the Act of 1919 contains, *inter alia,* as follows: "If the court decide that the paper objected to was not filed by parties entitled under this act to file the same, it shall be wholly void; but if it be judged defective only, the court shall indicate the matters in which it requires amendment," etc.

If this respondent was not *entitled* to file this paper because of the fact that he is ineligible to hold the office of jury commissioner, then an amendment should not be allowed, as no amendment could be made that would entitle the respondent to hold the office.

The reason given by the objectors to sustain this objection is the Act of Assembly of April 10, 1867, P. L. 62. Section 1 of said act, after describing the kind of men to be elected to this office and the term of their election, states: "But the same person or persons shall not be eligible for re-election more than once in any period of six years."

It is admitted by respondent that he was elected to the office of jury commissioner in 1917 and re-elected in 1921. That he qualified as jury commissioner after each of said elections and is still serving in said office.

Under this admission, if the respondent is elected under the nomination paper filed in this case, it would be his second re-election and directly contrary to the provisions of the Act of April 10, 1867, P. L. 62.

Whether or not it was the duty of the county commissioners to examine this nomination paper, and because of the Act of 1867, referred to, refuse the same, we do not decide; but we do decide that it was incumbent upon the respondent to know whether he was eligible to election to the office for which he filed such paper, and if ineligible, he had no right to file the same.

Counsel for respondent argues that this objection cannot be raised in this proceeding and that the objectors must await the result of the election and then, if the respondent is re-elected, *quo warranto* or some other proceeding must be instituted to test his right to the office.

If this argument holds good, then one would be allowed to take advantage of his own wrong act. Such is not the law.

This objection is, therefore, sustained.

And now, Oct. 16, 1925, after full hearing and argument, and after such consideration as time allowed, the objections set out under paragraph *(e)* of reason 3 is sustained, and it is ordered, adjudged and decreed that the nomination paper filed by this respondent is irregular and void and that his name cannot appear among the list of candidates to be voted for at the general election to be held on Nov. 3, 1925.

It is further ordered and decreed that John H. Hamilton, the respondent, pay the costs of this proceeding.

From W. E. Shaffer, Lock Haven, Pa.